# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff,*

v.

MARCUS LEWIS,

    *Defendant.*

Case No. 12-10180-EFM

## MEMORANDUM AND ORDER

Defendant Marcus Lewis was indicted on one count of failing to register as a sex offender, as required by the Sex Offender Registration and Notification Act ("SORNA"),[1] when he relocated from Kansas to Missouri and then to Georgia. After this Court denied Lewis's motion to dismiss the indictment for lack of venue, Lewis proceeded to trial before the bench on April 16, 2013. Having reviewed and considered the evidence presented at trial, the Court now finds Lewis guilty of failing to register as a sex offender, in violation of 18 U.S.C. § 2250(a).

### I. Stipulations

Before proceeding to trial before the bench, the Court engaged in a colloquy on the record with Defendant Marcus Lewis to ensure that he was knowingly and voluntarily waiving

---

[1] *See* 42 U.S.C. §§ 16911 *et seq.* (containing the provisions of SORNA); 18 U.S.C. § 2250(a) (criminalizing SORNA's registration requirements).

his right to trial by jury. Both parties also signed a written waiver to that effect. And each parties' counsel declined to make opening statements to the Court.

Before the Government called its first witness, the Court recited for the parties the Court's own understanding of the elements of the charged offense. Specifically, the Court stated that the Government was required to prove the following three elements beyond a reasonable doubt: (1) that Lewis is required to register as a sex offender under SORNA; (2) that Lewis traveled in interstate commerce; (3) that in the District of Kansas, beginning sometime after August 5, 2011, and continuing until about July 25, 2012, Lewis knowingly failed to register or update a registration as required by SORNA.[2] The parties stipulated that the first element was undisputed—Lewis is a sex offender required to register pursuant to SORNA. Lewis was willing to stipulate to the fact that he traveled in interstate commerce, but because Lewis and the Government disagreed about the nature of that interstate travel for purposes of this prosecution, the Court declined to treat the second element as a stipulated fact. Finally, with respect to the third element, the parties agreed that SORNA required Lewis to appear in person, within three business days of changing his residence, in at least one jurisdiction where he was required to register and inform that jurisdiction of all changes in the information required for the sex offender registry.[3]

## II. Findings of Fact

In 1996, Lewis was convicted of first-degree statutory rape in Missouri and was ordered to register as a sex offender. Lewis registered as a sex offender in Lyon County, Kansas, for the

---

[2] *See* 18 U.S.C. § 2250(a)(1), (2)(B), (3).

[3] *See* 42 U.S.C. § 16913(a), (c).

first time on September 17, 2008, and his last registration form on file was dated May 18, 2011. Lewis was required to register again in September 2011.

The registration form that sex offenders fill out for the county include an acknowledgement portion that notifies the offender of their obligation to keep their registration current. Lewis signed an acknowledgement with his May 18, 2011, registration that he understood, "If I change my address, I must give written notice to the sheriff's office where I last registered and to the Kansas Bureau of Investigation."[4]

The district court in Lyon County issued a probation violation warrant for Lewis in an unrelated matter. On August 7, 2011, Lyon County Sheriff's Deputy Jacob Welsh attempted to locate Lewis at the home address listed for him in the sex offender registry. Deputy Welsh could not find Lewis in Lyon County, despite the fact that Lewis never informed Lyon County that he was changing residences. Deputy Welsh continued to search for Lewis in the county and also contacted the U.S. Marshals Service to ask for their assistance in locating Lewis. Deputy Welsh provided the Marshals with two addresses in Kansas City, Missouri, that were believed to belong to Lewis's mother. Inspector Matthew Cahill followed up on Deputy Welsh's leads in Missouri, but did not find Lewis or any evidence that Lewis had recently registered as a sex offender in Missouri.

In July 2012, Lewis was arrested in Fulton County, Georgia, on the probation violation warrant issued from Lyon County, Kansas. At the request of the USMS in Kansas, Senior Inspector Katrina Crouse interviewed Lewis at the Fulton County Jail on July 27, 2012. After

---

[4] Government Ex. 1, p. 2, ¶ 5. On cross-examination, the administrative officer of the Kansas Bureau of Investigation Offender Registration Unit testified that registration laws changed in July 2011 to require more frequent registrations and reducing the time for updating registration information from fourteen to three days. The Government did not offer evidence that Lewis was notified of that change. But the difference between the three- and fourteen-day requirements is immaterial to this case.

waiving his *Miranda* rights, Lewis told Inspector Crouse that he left Kansas after his probation officer accused him of violating his probation. Lewis said that he had been in Georgia for three months after traveling there via Greyhound bus.[5] When Inspector Crouse asked Lewis whether he realized that he needed to register as a sex offender once he arrived in Georgia, Lewis replied that he was aware of his obligation, but did not do so because he knew he had outstanding arrest warrants from Kansas. On August 14, 2012, the grand jury indicted Lewis on one count of failing to register as a sex offender in violation of 18 U.S.C. § 2250(a).

### III. Conclusions of Law

To convict Lewis of violating § 2250(a), the Court must find beyond a reasonable doubt that (1) Lewis is required to register as a sex offender under SORNA; (2) Lewis traveled in interstate commerce; and (3) in the District of Kansas, beginning sometime after August 5, 2011, and continuing until about July 25, 2012, Lewis knowingly failed to register or update a registration as required by SORNA.[6] The parties have stipulated to the first element of the crime, but several issues remain for the Court to rule upon.

**A.    Lewis failed to update his registration as required under SORNA.**

First, under the third element of § 2250(a), an offender fails to register under SORNA if he does not appear in person, within three business days of changing his residence, in at least one jurisdiction where he was required to register and inform that jurisdiction of all changes in the information required for the sex offender registry.[7] A defendant's "residence" is the specific

---

[5] The parties stipulated to the admission of an exhibit showing a copy of a Greyhound bus ticket issued to Marcus Lewis for travel from Kansas City, Missouri, to Atlanta, Georgia, in April 2012. *See* Def.'s Ex. A. These documents, however, were never authenticated as specifically pertaining to the Defendant.

[6] *See* 18 U.S.C. § 2250(a)(1), (2)(B), (3).

[7] *See* 42 U.S.C. § 16913(a), (c).

dwelling place—such as a house, apartment, or homeless shelter—where the defendant habitually lives.[8] "Places where a person 'habitually lives' include places in which that person lives with some regularity, not just the place that the person calls his home address or place of residence."[9] An individual "changes his residence" under SORNA when he abandons his residence, whether by leaving his home, moving into a new dwelling, becoming homeless, or other means.[10]

In this case, testimony from Deputy Welsh and Inspector Cahill established that, as of August 7, 2011, Lewis could not be found at his residence in Lyon County, Kansas, despite continuing attempts to locate him. Based on that testimony and the fact that Lewis was finally located in Georgia, the Court concludes that Lewis abandoned his residence in Lyon County sometime prior August 7, 2011. When he abandoned that residence, Lewis changed his residence for purposes of SORNA, thereby triggering his obligation to update his sex offender registration information. The Government's witnesses testified that they never received information that Lewis had registered in another jurisdiction—as they would have if he had in

---

[8] *See United States v. Murphy*, 664 F.3d 798, 801 & n.1 (10th Cir. 2011) ("[T]he offender's jurisdiction is where he must keep his registration current, while the offender's residence is a specific piece of registry information, a change of which sparks a reporting duty.").

[9] *United States v. Rock*, 417 Fed. App'x 597, 599 (8th Cir. 2011) (including in an appendix a portion of the instructions provided to the jury at trial); *see also United States v. Wampler*, 703 F.3d 815, 820 (5th Cir. 2013) (affirming a district court's use of the same definition of "habitually resides" in a jury instruction). The Attorney General's Guidelines for SORNA also state that "habitually lives" should be interpreted as "any place in which the sex offender lives for at least 30 days." Office of the Attorney General, *The National Guidelines for Sex Offender Registration and Notification*, 73 Fed. Reg. 38030-01 (July 2, 2008).

[10] *Murphy*, 664 F.3d at 801, 802–03 (citing *United States v. Voice*, 622 F.3d 870, 875 (8th Cir. 2010), *cert. denied*, __ U.S. __, 131 S. Ct. 1058 (2010); *United States v. Van Buren*, 599 F.3d 170, 175 (2d Cir. 2010), *cert. denied*, __ U.S. __, 131 S. Ct. 483 (2010)) ("*Van Buren* and *Voice* were correctly decided. The permanent abandonment of an abode constitutes a change of residence, regardless of whether a new residence has been formally adopted. Moreover, this statutory construction aligns with legislative intent, because Congress's goal in enacting SORNA was to ensure that sex offenders could not avoid registration requirements by moving out of state.").

fact registered somewhere. The Court must therefore conclude that Lewis did not appear in person, within three days of abandoning his Kansas residence, in any jurisdiction involved in Lewis's registration to inform them of his updated information. Consequently, Lewis failed to update his registration as required under 42 U.S.C. § 16193(c).

**B.      Lewis's failure to register was done knowingly.**

Second, to be convicted under § 2250(a), Lewis's failure to register pursuant to SORNA must have been knowing. A defendant "knowingly" violates § 2250(a) if he had knowledge of the obligation to register upon changing residences and his failure to do so was not the result of ignorance, mistake, or accident.[11] The Government does not have to prove that the defendant specifically knew that he was violating a *federal* law by failing to register or update his registration. It is sufficient for the Government to prove that the defendant knew of his obligation to register as a sex offender whenever he changed his residence as a result of a prior state court conviction for a sex offense.[12]

Here, Inspector Crouse testified that Lewis told her that he was aware of his obligation to register upon his arrival in Georgia, but chose not to do so in an attempt to evade outstanding warrants. Lewis also signed a written acknowledgement that he knew he was to inform Kansas authorities if he changed his address. Lewis's verbal and written acknowledgements of his

---

[11]    *Voice*, 622 F.3d at 876.

[12]    *Rock*, 417 Fed. App'x at 599 (including in an appendix a portion of the instructions provided to the jury at trial); *see also Voice*, 622 F.3d at 876 (rejecting a defendant's argument that the Government was required to prove that the defendant "knew his actions triggered an obligation to update his registration"); *United States v. Hartzog*, 383 Fed. App'x 730, 732 (10th Cir. 2010) (holding that receiving notice of the defendant's obligations to register under state law is sufficient to satisfy due process); *United States v. Griffey*, 589 F.3d 1363, 1367 (11th Cir. 2009) ("Section 2250(a) does not require that [the defendant] specifically know that he was violating SORNA, but only that he 'knowingly' violated a legal registration requirement upon relocating."), *cert. denied*, __ U.S. __, 130 S. Ct. 3290 (2010); *United States v. Gould*, 568 F.3d 459, 468 (4th Cir. 2009) ("In 18 U.S.C. § 2250(a), 'knowingly' modifies 'fails to register.' There is no language requiring specific intent or a willful failure to register such that [a defendant] must know his failure to register violated federal law.") *cert. denied*, __ U.S. __, 130 S. Ct. 1686 (2010).

reporting requirement are sufficient to establish that his failure to update his registration by appearing in person in one of the jurisdictions involved in his reporting obligation was not the product of ignorance, mistake, or accident. Therefore, Lewis knowingly violated § 2250(a).

**C. Lewis's interstate travel included Kansas, such that Lewis violated § 2250(a) in the District of Kansas.**

Finally, the Court must decide whether Lewis committed this violation in the District of Kansas. At trial, Lewis renewed his objection to the Court's previous order establishing that the case is properly venued in Kansas. Lewis also argued that his interstate travel did not take place until he had left Kansas and crossed the border into Missouri. Having heard and considered all of the evidence, the Court again concludes that Kansas is a jurisdiction involved in Lewis's failure to register and his interstate travel.

Under 42 U.S.C. § 16913(c), an offender who changes residences must update his registration by appearing in person "in at least 1 jurisdiction involved pursuant to subsection (a) . . . . That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register." Subsection (a) requires an offender to register "in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."[13] The "jurisdiction where the offender resides" is the state that is the location of the offender's home or other place where the offender habitually lives.[14] A person may reside in more than one jurisdiction for purposes of § 16913(a).[15] Therefore, setting aside

---

[13] 42 U.S.C. § 16913(a).

[14] *See* 42 U.S.C. § 16911(10), (13); *Murphy*, 664 F.3d at 800–01 ("The 'jurisdiction where the offender resides' is usually a U.S. state—the state where the individual keeps his home or habitually lives . . . .").

[15] *See* Office of the Attorney General, *The National Guidelines for Sex Offender Registration and Notification*, 73 Fed. Reg. 38030-01 (July 2, 2008) (using the plural form "jurisdictions of residence" and stating that "a sex offender must register: [i]n any jurisdiction in which he has his home; and [i]n any jurisdiction in which he habitually lives (even if he has no home or fixed address in the jurisdiction, or no home anywhere)").

for a moment an offender's obligation to register in the jurisdictions of his employment and/or school, more than one jurisdiction may nevertheless be a "jurisdiction involved" in the offender's obligation to update his registration.

The Attorney General's National Guidelines for SORNA further explain that when an offender changes residences by leaving one jurisdiction and entering another, the jurisdiction the offender left remains a "jurisdiction involved" for purposes of § 16913(c). The Guidelines state that when an offender appears in person in a jurisdiction to update his registration, that jurisdiction must immediately forward the updated information "to all other jurisdictions in which . . . [t]he sex offender was required to register as a resident . . . even if the sex offender may no longer be required to register in that jurisdiction in light of the change of residence."[16] In this case, Kansas was a jurisdiction in which Lewis was required to register as a resident. Therefore, had Lewis registered upon his arrival in Georgia, Kansas would need to be notified of the change in Lewis's residential information, making Kansas a "jurisdiction involved" under § 16193(c).

Furthermore, the Guidelines point out that an offender could conceivably leave a jurisdiction in which he was required to register and wander nomadically across the country without forming a habitual residence in any new jurisdiction. In that situation, SORNA would be unable to fulfill its statutory purpose of "protect[ing] the public from sex offenders and offenders against children"[17] because the public would have no way of knowing that a transient sex offender is in their proximity. The instant case is a fine example of that problem—after

---

[16] *Id.*

[17] 42 U.S.C. § 16901.

leaving Kansas, Lewis apparently moved around the Kansas City area, staying with friends and relatives. But the residents of Kansas City were not privy to Lewis's presence.

To remedy the problems that arise when a transient sex offender moves in and out of different jurisdictions, the National Guidelines set forth the following mandate:

> [A] jurisdiction in which a sex offender is registered as a resident . . . must also require the sex offender to inform the jurisdiction if the sex offender is terminating residence . . . in the jurisdiction, even if there is no ascertainable or expected future place of residence, employment, or school attendance for the sex offender.[18]

Here, Kansas did in fact require Lewis to notify authorities if he left the state.[19] Moreover, the National Guidelines make clear that the jurisdiction of the terminated residence is a jurisdiction involved in the offender's obligation under SORNA to update his registration upon a change of residence.[20] It follows, then, that Kansas was a jurisdiction involved in Lewis's failure to fulfill that obligation—a crime under 18 U.S.C. § 2250(a). The Court therefore concludes that Lewis violated § 2250(a) within the jurisdiction of the District of Kansas.

To the extent that Lewis contends that his stay in Missouri severed any connection that Kansas had to the crime in the way the Eighth Circuit described in *United States v. Pietrantonio*,[21] such argument fails. As the Court held in its order denying Lewis's motion to dismiss the indictment, failure to register under 18 U.S.C. § 2250(a) is a continuing crime that begins in the state from which the sex offender moves and is completed only when the offender

---

[18] Office of the Attorney General, *The National Guidelines for Sex Offender Registration and Notification*, 73 Fed. Reg. 38030-01 (July 2, 2008).

[19] *See* Kan. Stat. Ann. § 22-4905(g) (requiring in-person notification of any "change or termination of residence location").

[20] *See also Murphy*, 664 F.3d at 804 ("And although he was no longer residing at a particular location, [the defendant]'s reporting obligation did not end just because he left the state.").

[21] 637 F.3d 865 (8th Cir. 2011).

either registers or is arrested.[22] Unlike the defendant in *Pietrantonio*, Lewis traveled from Kansas to Georgia without either registering or being arrested. Therefore, his failure to register was one extended violation of § 2250(a) that commenced in Kansas and ended upon his arrest in Georgia. In light of the foregoing findings of fact and conclusions of law, the Court finds Lewis guilty of failing to register under SORNA in violation of § 2250(a).

**IT IS ACCORDINGLY ORDERED** this 24th day of April, 2013, that

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[22] *See also Murphy*, 664 F.3d at 807 (Lucero, J., dissenting) ("[T]he crime of failing to update a registry begins in the state from which the sex offender moves."); *Pietrantonio*, 637 F.3d at 870 ("Indeed, all of the courts that have recognized a 'continuing' SORNA violation have found that the violation continues until the defendant is arrested *or* registers.").